1  Benno Ashrafi, Esq. (CSBN 247623)
2  *bashrafi@weitzlux.com*
   Michael Reid, Esq. (CSBN 317740)
3  *mreid@weitzlux.com*
   Tyler Stock, Esq. (CSBN 288178)
4  *tstock@weitzlux.com*
   WEITZ & LUXENBERG, P.C.
5  1880 Century Park East, Suite 700
6  Los Angeles, California 90067
   Telephone: (310) 247-0921
7  Facsimile:  (310) 786-9927
8
9  Attorneys for Plaintiff
10
11          **UNITED STATES DISTRICT COURT**
12          **CENTRAL DISTRICT OF CALIFORNIA**
13

<table>
<tr><td>14  JAMES LAUKAT, an individual;<br>MISUN LAUKAT, an individual;<br>15<br>16          Plaintiffs,<br>17     v.<br>18  ABB, INC., et al.,<br>19<br>20          Defendants.</td><td>CASE NO.  2:19-cv-09436-CJC-Ex<br><br>Los Angeles Superior Court Case No.<br>19STCV33853<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS**<br><br>Hearing Date: March 2, 2020<br>Time:           1:30 p.m.<br>Place:          Courtroom 7C<br>Judge:         Hon. Cormac J. Carney<br><br>Initially Filed:      September 24, 2019<br>Trial Date:          None Set</td></tr>
</table>

21
22
23
24
25
26
27
28

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

# **TABLE OF CONTENTS**

I.       INTRODUCTION ............................................................................................. 6

II.      STATEMENT OF FACTS ............................................................................... 7

    A.     Procedural Background............................................................................ 7

    B.     JLRA is a Foreign Corporation and JLRNM is Its Wholly-Owned
           Domestic Subsidiary. ............................................................................. 7

III.     LEGAL ARGUMENT..................................................................................... 10

    A.     If Allowed By State Law, Federal Law Permits Service of Foreign
           Corporations Through Their Domestic Subsidiaries as an
           Alternative to Service Under the Hague................................................ 10

    B.     California Law Permits Litigants to Achieve Effective Service on
           Foreign Corporations By Serving Domestic Subsidiary as a
           General Manager. .................................................................................. 12

         1.     Background Principles.................................................................. 12

         2.     *Cosper v. Smith & Wesson Arms Co.* (California Supreme
              Court). ........................................................................................... 13

         3.     *Yamaha Motor Co., Ltd. v. Superior Court* (California Court
              of Appeal)...................................................................................... 14

         4.     *Falco v. Nissan North America, Inc.* (C.D. Cal.)........................ 17

         5.     *Khachatryan v. Toyota Motor Sales, U.S.A., Inc. (C.D. Cal.)....*. 19

    C.     Plaintiffs Properly Served JLRA By Delivering Process to JLRNA,
           Its General Manager, as Permitted By California Law. ......................... 20

         1.     JLRNA Meets and Exceeds the Definition of JLRA's
              "General Manager" for Purposes of Service of Process
              Under § 416.10. ........................................................................... 20

          2.     California Law Provides That Service Was Complete Upon
              Delivery of a Copy of the Summons and Complaint to
              JLRA's General Manager Via Its Registered Agent.................... 22

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

D.      Plaintiffs Request Leave to Seek Jurisdictional Discovery. ................... 23

IV.     CONCLUSION .............................................................................. 24

**WEITZ & LUXENBERG P.C.**
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

1

## TABLE OF AUTHORITIES

2

Cases

3   *Cosper v. Smith & Wesson Arms Co.*, 53 Cal.2d 77 (1959) ..................... 13, 14, 22, 24

4   *Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1986)................................... 17

5   *Eclipse Fuel Eng'g Co. v. Superior Court*, 148 Cal.App.2d 736 (1957) ......... 13, 14, 22

6   *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071 (C.D. Cal. 2013) ............. 17, 18, 19

7   *Gibble v. Car-Lene Research, Inc.*, 67 Cal.App.4th 295 (1998) ....................... 6, 14, 21

8   *Goehring v. Superior Court*, 62 Cal.App.4th 894 (1998) .......................................... 23

9   *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928 (C.D. Cal. 2008) ........... 18, 20

10  *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. CIV. C-07-06222 RMW, 2010 WL

11      2605195 (N.D. Cal. 2010) ................................................................................ 11, 18

12  *Hitt v. Nissan Motor Co.*, 399 F. Supp. 838 (S.D. Fla. 1975) .................................... 18

13  *Holiness Church of San Jose v. Metropolitan Church Ass'n*, 12 Cal.App. 445

14      (1910)................................................................................................................. 22

15  *In re Automobile Antitrust Cases I & II*, 135 Cal.App.4th 100 (2005)....................... 23

16  *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F.Supp.2d 1224 (C.D.

17      Cal. 2008)........................................................................................... 11, 18, 19, 20

18  *Pasadena Medi-Ctr. Associates v. Superior Court*, 9 Cal.3d 773 (1973)................... 12

19  *Rockwell Automation, Inc. v. Kontron Modular Computers*, No. 12CV566-

20      WQH WMC, 2012 WL 5197934 (S.D. Cal. 2012) ................................................. 17

21  *Sales Affiliates, Inc. v. Superior Court*, 96 Cal.App.2d 134 (1950) ........................... 14

22  *Sims v. Nat'l Engineering Co.*, 221 Cal.App.2d 511 (1963) ..................................... 22

23  *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523 (2000)..................... 21

24  *Thomson v. Anderson*, 113 Cal.App.4th 258 (2003)................................................. 23

25  *Troll Busters LLC v. Roche Diagnostics GmbH*, No. 11CV56-IEG WMC, 2011

26      WL 3859721 (S.D. Cal. 2011).............................................................................. 17

27  *U.S. ex rel. Miller v. Public Warehousing Co. KSC*, 636 Fed.Appx. 947 (9th

28      Cir. 2016) ........................................................................................................... 23

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ............10, 11, 24

*Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal.App.4th 264 (2009) ............12, 15

Statutes

Code Civ. Proc, § 416.90 ........................................................................... 22

Code Civ. Proc., § 415.10 ........................................................................... 12

Code Civ. Proc., § 416.10 ........................................................................12, 22

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff James Laukat ("Plaintiff" or "Mr. Laukat") has named, and properly served, Defendant Jaguar Land Rover Automotive PLC, a British corporation ("Defendant" or "JLRA"). Counsel for JLRA has moved to dismiss Plaintiffs' summons and complaint on the ground that JLRA was not served properly.  JLRA is mistaken. Plaintiffs properly served JLRA via its wholly-owned American subsidiary, Jaguar Land Rover North America, LLC's ("JLRNM"), agent for service of process.

JLRA does not challenge that JLRNM is its wholly-owned subsidiary, nor does it claim that there were any technical deficiencies with Plaintiff's service upon JLRNM. Rather, JLRA simply asserts, with zero evidentiary support, that Plaintiffs' service was improper because JLRANM "is [not] an employee or agent of [JLRA], let alone an officer or general manager." (Defendant's Mem. of Ps & As at 8:16-22.) However, JLRA misunderstands California's definition of "general manager" as it pertains to service of process and conflates it with definitions relating to personal jurisdiction. (*Id.* at 8:23-11:3.) In so doing, JLRA ignores the United States Supreme Court's long-standing precedence finding service upon a foreign corporation's domestic subsidiary a valid means of serving a foreign corporation – as long as it comports with state law - and California's long-standing precedence holding that a "general manager in this state," pursuant to Corporations Code section 2110, "includes any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'" (*Gibble v. Car-Lene Research, Inc.*, 67 Cal.App.4th 295, 313 (1998).)

As demonstrated below, JLRNM is JLRA's general manager in this state pursuant to Corporations Code § 2110 and, thus, JLRA was properly served with the summons and complaint in this matter. Its motion to quash service of process should be denied.

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

## II.    STATEMENT OF FACTS

### A.    Procedural Background

Plaintiffs filed their Complaint on September 24, 2019. (Declaration of Tyler Stock ("Stock Decl."), Ex. A, Plaintiffs' Complaint.)[1] On October 1, 2019, Plaintiffs properly served JLRA, through its wholly-owned domestic subsidiary, JLRNM, via JLRNM's agent for service of process, CSC Lawyers Incorporating Service ("CSC"). (Declaration of Christine Diaz Reynolds ("Reynolds Decl."), ¶¶ 2, 3, Ex. 1.) JLRA does not dispute that CSC is JLRNM's registered agent for service of process, nor does it claim that there were any technical deficiencies with Plaintiffs' service upon CSC outside of its claim that service upon JLRA was ineffective because JLRNM "is [not] an employee or agent of [JLRA], let alone an officer or general manager." (Defendant's Mem. of Ps & As at 8:16-22.)

### B.    JLRA is a Foreign Corporation and JLRNM is Its Wholly-Owned Domestic Subsidiary.

According to JLRA, it "is a public limited company incorporated under the laws of England and Wales (Company No. 06477691) and maintains its headquarters in Whitley, Coventry, United Kingdom." (Declaration of Keith Benjamin ("Benjamin Decl.") at ¶ 4.) JLRA admits that it is "the shareholder of Jaguar Land Rover Holdings Limited, which is also a holding company and is in the business of manufacturing and selling luxury motor vehicles" and admits that it is also "a foreign parent company of [JLRNM]". (*Id.* at ¶¶ 5, 8.) However, despite acknowledging that Plaintiffs' claims of proper service in this case are based on JLRA's relationship to JLRNM, beyond what is recounted above, JLRA otherwise fails to address its connection to JLRNM in any meaningful manner, much less describe the services JLRNM provides on its behalf in North America and California specifically.

JLRA describes itself as a "British company with global capabilities in manufacturing and engineering." (Stock Decl., Ex. B, JLRA 2018/2019 Annual

---

[1] All exhibits are attached to the Declaration of Tyler Stock, unless otherwise noted.

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

Report at p. 14.) Its "principal activity [is] the design, development, manufacture and marketing of high-performance luxury saloons, specialist sports cars and four-wheel-drive off-road vehicles." (*Id.* at p. 111; Ex. K, JLRA's Corporate Website - Jaguar Land Rover Automotive Plc Launch of Senior Notes Offering ["Jaguar Land Rover designs, develops, manufactures and sells Jaguar premium sports saloons, sports cars and luxury performance SUV's and Land Rover premium all-terrain vehicles (and related parts and accessories and associated activities) through a global sales and distribution network."].)

JLRNM, unlike JLRA, is an American corporation incorporated in Delaware and headquartered in New Jersey. It has been registered to business in the state of California since at least 2008 and its registered agent for service of process in the state is CSC. (Stock Decl., Ex. C, CA Secretary of State Business Search Results.) However, JLRNM is – and has always been – JLRA's wholly-owned domestic subsidiary. (Reynolds Decl. at ¶ 3; Benjamin Decl. at ¶ 8; Stock Decl., Ex. B, JLRA 2018/2019 Annual Report at p. 181 [showing JLRA holds 100% of JLRNM's shares].) It is the North American arm of JLRA's "global sales and distribution network."

JLRA admits that "all Jaguar and Land Rover vehicles sold in the US are imported" and that a "significant portion of [its] revenue is derived from North America…." (Ex. B, JLRA 2018/2019 Annual Report at pp. 16, 70; see also *id.* at p. 76 [North America represents 24.1% of JLRA's annual retail sales by region].) Indeed, JLRA's annual report utilizes consolidated financial statements which include the sum of JLRA and all of its subsidiaries' revenues and expenses. As JLRA states, its subsidiaries, including JLRNM, "are entities controlled by [JLRA]. Control exists when [JLRA] has power over the investee, is exposed or has rights to variable return from its involvement with the investee and has the ability to use its power to affect its

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1  returns."[2] (*Id.* at p. 111, 181; see also *id.* at p. 175 [notably, transactions and balances

2  between JLRA and JLRNM "are eliminated on consolidation"].)

3       For its part, as the North American arm of JLRA's "global sales and

4  distribution network," JLRNA markets, sells, and services Jaguar and Land Rover

5  vehicles in the United States and Canada. (Ex. D, JLRA's Corporate Website – Joe

6  Eberhardt Bio; see also Ex. E, JLRA's Corporate Website – Kim McCullough Bio

7  ["As Vice President of Marketing [for JLRNA], McCullough will lead distinct Jaguar

8  and Land Rover marketing operations, including brand strategy, advertising, digital,

9  experiential and partnerships for each brand."]; Ex. F, JLRA's Corporate Website –

10  JLRNA Launches New Marketing Campaign.) It does so by utilizing a "combined

11  network of 331 retailers across the U.S.," including 25 Land Rover retailers and 24

12  Jaguar retailers in California alone. (Ex. G, JLRNA's Corporate Website – JLRNA

13  Top Retailers; Ex. H, JLRNA Corporate Website – Land Rover Dealer Locator; Ex. I,

14  JLRNA Corporate Website – Jaguar Dealer Locator; Ex. J, JLRA's Corporate Website

15  – 2019 4th Quarter Financial Report at p. 29.)

16       Thus, JLRA designs, manufacturers, and supplies Jaguar and Land Rover

17  vehicles and parts to its wholly-owned American subsidiary, JLRNA, and JLRNA

18  handles marketing, sales, and service for the brand in the United States, including

19  California.

20  / / /

21  / / /

22  / / /

23

24  [2] That is consistent with JLRA's statements with regard to its and JLRNA's executives' roles within
the organizations. For example, JLRA's Chief Commercial Officer is "responsible for all global
25  sales and marketing activity for the Jaguar and Land Rover brands. His role includes brand
positioning, current and future product planning, customer relationship management, marketing
26  communications, brand experience strategies, global and regional sales management, customer
service and supporting future growth." (Stock Decl., Ex. B, JLRA 2018/2019 Annual Report at p.
27  86.) Meanwhile, JLRNM's President and CEO, who is "responsible for Jaguar Land Rover's North
American operations including Sales, Service and Marketing in the United States and Canada,"
28  reports directly to JLRA's Group Sales Operations Director. (Ex. D, JLRA's Corporate Website –
Joe Eberhardt Bio; see also Ex. E, JLRA's Corporate Website – Kim McCullough Bio.)

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

## III.   LEGAL ARGUMENT

**A.   If Allowed By State Law, Federal Law Permits Service of Foreign Corporations Through Their Domestic Subsidiaries as an Alternative to Service Under the Hague.**

In *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988), the United States Supreme Court held that where service on the American domestic subsidiary of a foreign corporation is valid under state law, ***there is no need to serve papers in accord with the Hague Service Convention***. *Schlunk* concerned a personal injury incident where the plaintiff attempted to serve his complaint against German auto manufacturer Volkswagen, through Volkswagen's Illinois domestic subsidiary as an involuntary agent of service. (*Id.* at 696.) *Schlunk* unequivocally rejected the position that the Hague Service Convention was mandatory for serving foreign defendants. (*Id.* at 705 ["compliance with the Convention is mandatory *in all cases to which it applies* … Our interpretation of the Convention does not necessarily advance this particular objective, inasmuch as it makes recourse to the Convention's means of service *dependent on the forum's internal law*." (emphasis added).]

The *Schlunk* Court noted that Article 1 of the Hague Service Convention applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad" and that "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." (*Schlunk*, *supra,* at 700.) The Court observed that "[i]n this case, the Illinois long-arm statute authorized Schlunk to serve VWAG by substituted service on VWoA, without sending documents to Germany … VWAG contends, however, that service on VWAG was not complete until VWoA transmitted the complaint to VWAG in Germany." (*Id.* at 706.) VWAG further contended that the requirements of Due Process meant that "every case involving service on a foreign national will present an 'occasion to transmit a judicial ... document for service

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

abroad" within the meaning of Article 1." (*Id.* at 707.) In evaluating the merits of VWAG's argument, the Court reasoned as follows:

> We reject [VWAG's] argument. Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications … The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service. And, contrary to VWAG's assertion, the Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national. Applying this analysis, we conclude that this case does not present an occasion to transmit a judicial document for service abroad within the meaning of Article 1. Therefore the Hague Service Convention does not apply, and service was proper.[3] (*Id.* at 707-08.)

*Schlunk* also directly addressed the Supremacy clause by thoroughly analyzing the Convention's drafting committee's proposals and policy rationale.[4] Indeed, the Court observed that "[t]he negotiating history of the Convention also indicates that whether there is service abroad must be determined by reference to the law of the forum state." (See *Schlunk*, 486 U.S. at 701.) Although acknowledging that the impact of forum state laws may "decrease the obligatory force of the Convention" the delegates to the convention did not mandate that Article 1 would apply to every instance of serving legal papers on foreign corporations. (See generally *id.* at 700-02.) After finalizing the draft of Article 1 that was later adopted, the drafters "explained that one must leave to the requesting [i.e., forum] state the task of defining when a document must be served abroad; that this solution was a consequence of the unavailability of an objective test; and that while it decreases the obligatory force of the Convention, it does provide clarity." (*Id.* at 702.) Accordingly, any argument by

---

[3] See *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F.Supp.2d 1224, 1228 (C.D. Cal. 2008) ["Since Khachatryan served Toyota Japan under California law in a manner which did not require the 'transmittal of documents abroad,' the Hague Convention does not apply in this instance."]; *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *1 (N.D. Cal. 2010) ["The Supreme Court made clear in *Volkswagenwerk* that the Hague Convention therefore does not apply when service on a domestic agent is valid under the law of the forum state."].

[4] *See Schlunk*, *supra*, at 699 ["By virtue of the Supremacy Clause … the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies … Therefore, if service of process in this case falls within Article 1 of the Convention, the trial court should have granted VWAG's motion to quash."].

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1   JLRA that the Supremacy Clause *requires* service under the Hague Service

2   Convention is contrary to the holding in *Schlunk*.

3       **B.**   **California Law Permits Litigants to Achieve Effective Service on**

4           **Foreign Corporations By Serving Domestic Subsidiary as a General**

5           **Manager.**

6           **1.**   **Background Principles.**

7         California Code of Civil Procedure section 416.10 governs how to serve

8   corporations and provides that service on a corporation may be made if "authorized by

9   any provision in Section … 2110 … of the Corporations Code …." (Code Civ. Proc.,

10  § 416.10(d); *Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal.App.4th 264, 271-72

11  (2009).) California Corporations Code section 2110 provides that "delivery by hand of

12  a copy of any process to the 'general manager in this state' of a foreign corporation

13  'shall constitute valid service on the corporation.'" (*Yamaha*, *supra*, at 272.) Where

14  the general manager is itself a corporation, service may be made upon the corporate

15  general manager through its registered agent for service of process. (See Code Civ.

16  Proc., § 416.10(a), and Comment – Judicial Council ["Section 416.10 enumerates the

17  individuals who are authorized to receive service on behalf of an ongoing

18  corporation."].) Importantly, "[s]ervice of a summons in this manner is deemed

19  complete at the time of such delivery." (Code Civ. Proc., § 415.10.)

20        The California legislature enacted section 416.10 in 1969, and "the provisions

21  of the new law, according to its draftsmen, 'are to be liberally construed.'" (*Pasadena*

22  *Medi-Ctr. Associates v. Superior Court*, 9 Cal.3d 773, 778 (1973).) Based on its own

23  review of the legislative history of section 416.10, the California Supreme Court has

24  noted that:

25            "'The provisions of this chapter should be liberally construed to

26            effectuate service and uphold the jurisdiction of the court if actual
              notice has been received by the defendant, and in the last analysis

27            the question of service should be resolved by considering each
              situation from a practical standpoint ...' The liberal construction

28            rule, it is anticipated, will eliminate unnecessary, time-consuming,

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1    and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings."

2    (*Ibid.* [internal citations omitted].)

3    ## 2.    *Cosper v. Smith & Wesson Arms Co.* **(California Supreme**

4    **Court).**

5    The California Supreme Court's opinion in *Cosper v. Smith & Wesson Arms*

6    *Co.*, 53 Cal.2d 77 (1959), controls the analysis of the issue before the Court. There,

7    the foreign defendant (Smith & Wesson) did not reside in California, had no physical

8    presence in California, and employed no agents, salesmen, or other employees in

9    California. (*Id.* at 80.) Nevertheless, a local sporting goods sales company

10   (Lookabaugh) acted as a "manufacturer's representative" for Smith & Wesson,

11   promoting the sale of Smith & Wesson products on the West Coast on a "non-

12   exclusive basis." (*Id.*) A plaintiff injured by an allegedly defective Smith & Wesson

13   handgun sued in California and served Smith & Wesson by delivering the process

14   papers to Lookabaugh. Smith & Wesson moved to quash, submitting evidence that it

15   had "no financial interest in the Lookabaugh Company nor any control over this

16   company or its employees; that Lookabaugh Company buys its own samples and 'no

17   help or assistance is given them by Smith and Wesson, Inc., except such advertising

18   material as is furnished by Smith and Wesson, Inc., to the general jobbing trade

19   throughout the world.'" (*Id.* at 80-81.) The trial court quashed service.

20   The Supreme Court reversed, however, holding that the service through the

21   non-exclusive sales agent (Lookabaugh) was proper because Lookabaugh was Smith

22   & Wesson's "general manager in this State." (*Cosper*, *supra*, at 79, 83-84.) As the

23   Supreme Court observed, "it has been said that 'every object of the service is obtained

24   when the agent served is of sufficient character and rank to make it reasonably certain

25   that the defendant will be apprised of the service made,' and by service on such an

26   agent, 'the requirement of the statute is answered.'" (*Id.* at 83 [quoting *Eclipse Fuel*

27   *Eng'g Co. v. Superior Court*, 148 Cal.App.2d 736, 746 (1957)].) After confirming that

28

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

1   the general manager issue inevitably "depends on the particular facts involved," the

2   *Cosper* court found that:

> Here, it reasonably appears that Lookabaugh as a manufacturer's representative actively engaged in promoting the sales of Smith and Wesson and earning commissions through such sales, would have ample regular contact with Smith and Wesson and would be of "sufficient character and rank to make it reasonably certain" that Smith and Wesson would be apprised of the service of process.

7   (*Cosper*, *supra*, at 83-84, quoting *Eclipse*, *supra*, at 746; see also *Gibble v. Car-Lene*

8   *Research, Inc.*, 67 Cal.App.4th 295, 313 (1998) ["This statutory term, which has not

9   been specifically defined by the Legislature, includes any agent of the corporation 'of

10  sufficient character and rank to make it reasonably certain that the defendant will be

11  apprised of the service made.'"].)

12          Regardless of the manner in which their business relationship was structured,

13  the Court explained that "the essential factor is that Lookabaugh in his selling and

14  advertising activities was performing services for Smith and Wesson and providing it

15  with the opportunity for 'regular contact with its customers and a channel for a

16  continuous flow of business into the state.'" (*Cosper*, *supra*, at 84 [quoting *Sales*

17  *Affiliates, Inc. v. Superior Court*, 96 Cal.App.2d 134, 136 (1950)].) In other words,

18  "the arrangement of Smith and Wesson with Lookabaugh appears … to have given

19  Smith and Wesson substantially the business advantages that it would have enjoyed 'if

20  it conducted its business through its own offices or paid agents in the state' … and

21  such arrangement was sufficient to constitute Lookabaugh 'the general manager in

22  this State' for purposes of service of process on Smith and Wesson." (*Cosper*, *supra*,

23  at 84, quoting *Eclipse*, *supra*, at 740.)

24          **3.     *Yamaha Motor Co., Ltd. v. Superior Court* (California Court of**

25          **Appeal).**

26          More recently, the California Court of Appeal in *Yamaha Motor Co., Ltd. v.*

27  *Superior Court*, 174 Cal.App.4th 264 (2009), applied *Cosper* to facts nearly identical

28

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

to the present case and held that service on an American subsidiary's agent for service of process was effective in serving a foreign manufacturer.

In *Yamaha*, the Fourth District Court of Appeals explained that its analysis would focus upon a single discrete issue: "The question of whether a Japanese manufacturer can be served under California law simply by serving the Japanese manufacturer's American subsidiary." (*Id.* at 267.) The court admitted to preliminarily harboring some doubt as to the validity of this method of effecting service upon foreign corporations, stating that, in its prejudgment, "[t]he method just seemed too easy a way to get around the Hague Service Convention." (*Id.*) The court nevertheless announced in the introduction to its opinion that "[o]n review, however, it turns out that, yes, it really is that easy. And not only that, there is nothing *this* court, as a matter of California common law, can do about it." (*Ibid* [emphasis in original].)

*Yamaha* arose as a personal injury case in which a child was injured while riding a Yamaha Rhino. The plaintiff named two companies as defendants – Yamaha Motor Company, Ltd., a Japanese company ("Yamaha-Japan"), and Yamaha Motor Corporation USA ("Yamaha-America"), an American subsidiary of Yamaha-Japan. The *Yamaha* court noted that the plaintiff "served Yamaha-America and also sought to serve Yamaha-Japan by serving Yamaha-America *through Yamaha-America's agent for service of process*. His theory was (and is) that Yamaha-America is Yamaha-Japan's 'general manager in this state.'" (*Id.* at 268 [emphasis added].) Yamaha-Japan moved to quash service, and the trial court denied the motion, reasoning that Yamaha-America was Yamaha-Japan's general manager. (*Id.*)

On appeal, the *Yamaha* court observed a number of "undisputed facts about Yamaha-America's relationship to Yamaha-Japan" including: "Yamaha-America is Yamaha-Japan's wholly owned domestic subsidiary in the United States;" Yamaha-America's principal business is to act as the exclusive importer and distributor of Yamaha vehicles … manufactured by Yamaha-Japan;" "Yamaha-America provides the warranty and owner manuals for Yamaha vehicles;" "Yamaha-America provides

marketing for Yamaha vehicles and receives all customer complaints and accident reports for the United States involving Yamaha vehicles;" and "Yamaha-Japan's 2007 annual report described Yamaha-America as Yamaha-Japan's 'Regional Headquarters for North America.'" (*Yamaha*, *supra*, at 268.) The Court added that, its own suspicions notwithstanding, "[a]s an intermediate appellate court, we are bound by *Cosper* … [and] [g]iven that there has been no change in the relevant statutory structure governing service of a foreign corporation in California since *Cosper*, there is no basis to say *Cosper* has been abrogated by statute, and there is certainly no basis to distinguish it factually (far from it). So we have to follow it."[5] (*Id.* at 274-75 [internal citation omitted].)

After reviewing the precedent established by *Cosper*, and in view of the foregoing facts, the *Yamaha* court found that "*Cosper* applies a fortiori to this case – that is, the relationship between the manufacturer's representative and the manufacturer in *Cosper* was far less intimate, far less connected, and far less interrelated than the relationship between Yamaha-America and Yamaha-Japan in the case before us." (*Yamaha*, *supra*, at 274.) The court stated rhetorically that "[i]f, in *Cosper,* a sporting-goods-oriented non-exclusive purveyor of Smith and Wesson guns on the West Coast was a 'general manager in this State' … how much more so is Yamaha-America the 'general manager in this State' ... where here, where (unlike *Cosper*), Yamaha-America is the American face of the Japanese company." (*Id.*) In concluding that service upon Yamaha-America was sufficient to provide notice to Yamaha-Japan, the court stated that:

> Probable contact between the domestic representative and the foreign corporation leading to actual notification is far more present here than in *Cosper*. If it was reasonably certain that a relatively casual sporting goods representative would apprise the "foreign" manufacturer of service in *Cosper*, it is doubly reasonably certain Yamaha-America will apprise Yamaha-Japan of any service in California.

---

[5] See also *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1078 (C.D. Cal. 2013) ["In short, as long as the rule of *Cosper* is good law, this court is compelled to follow it, and it will do so here."].)

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

*(Id.)*[6]

#### 4. *Falco v. Nissan North America, Inc.* (C.D. Cal.).

In recent years, Federal Courts in California have had several opportunities to visit the proper application of *Cosper*, *Yamaha*, and the applicable California statutes – more so in fact than the California appellate courts. These Federal Courts have issued opinions that are instructive.[7]

For instance, in *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071 (C.D. Cal. 2013), the Central District of California denied a motion to dismiss for insufficient service of process asserted by Nissan Japan ("NML"), after the plaintiff delivered process via substitute service to its American subsidiary, Nissan North America ("NNA"), as general manager of NML. Indeed, the proof of service documenting the plaintiff's service of process upon NML, through NNA, stated that service was delivered to NNA, "which is general manager of [NML]."

NML challenged the adequacy of plaintiff's service, contending that plaintiff's service of papers upon a subsidiary did not equate to service upon the parent corporation and that, even if it did, NNA was not the general manager of NML. As to the first of these grounds, i.e., that service upon a subsidiary does not constitute service upon a parent corporation – a proposition with which the court agreed – the court concluded that NML's statement of law was of "no import for the present case because Plaintiffs' contention that service on [NML] may be made upon [NNA] is not premised on the parent-subsidiary relationship between the two companies. Rather, as discussed above, Plaintiffs assert that [NML] may be served via [NNA] because

---

[6] See also, the following cases applying *Cosper* and *Yamaha*: *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071 (C.D. Cal. 2013); *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F.Supp.2d 1224 (C.D. Cal. 2008); *Troll Busters LLC v. Roche Diagnostics GmbH*, No. 11CV56-IEG WMC, 2011 WL 3859721 (S.D. Cal. 2011); *Rockwell Automation, Inc. v. Kontron Modular Computers*, No. 12CV566-WQH WMC, 2012 WL 5197934 (S.D. Cal. 2012).

[7] Notably, the Ninth Circuit has previously found that "this court is bound to follow a state court's interpretation of that state's statutes." (*Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986).)

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

[NNA] is a 'general manager' under California law." (*Id.* at 1075.) In this regard, the *Falco* court noted that:

> California law provides that service of process may be effected on a corporation by, among other means, delivering a copy of the summons and the complaint to "a general manager" of the corporation. California courts have interpreted "general manager" to "include [ ] any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'"[8]

As to the second ground, much like JLRA here, NML argued that NNA was "not [NML's] designated general manager and does not have management responsibilities or exercise control over [NML]." (*Falco*, 987 F. Supp. 2d at 1075.) After assessing the parties' arguments, the *Falco* court concluded that a trio of opinions – *Yamaha*, *supra*; *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008); and *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928 (C.D. Cal. 2008)[9] – controlled its analysis. More specifically, the court observed that, "[a]s in all three cases, [NNA] is a wholly owned domestic subsidiary of its Japanese parent corporation, [NML], for which it serves as the sole and exclusive distributor of Nissan vehicles in the United States."[10] (*Id.* at 1077.) The *Falco* court further explained that:

> As such, [NML's] relationship with [NNA] gives [NML] "substantially the business advantages that it would have enjoyed if it conducted business in [California] itself." Moreover, the close relationship between [NML] and [NNA] – a relationship certainly as close as those in … *Yamaha Motor Co.*, and *Cosper* – makes it "reasonably certain that [NML] would be apprised of the service of process."

---

[8] (*Falco*, 987 F. Supp. 2d at 1074 (internal citations omitted); *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. CIV. C-07-06222 RMW, 2010 WL 2605105, at *1 (N.D. Cal. 2010) ("The requirement of serving the general manager in California is met 'when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'" (internal citations omitted).)

[9] (See also *Falco*, 987 F. Supp. 2d at 1077-78 ("the California Supreme Court has explicitly interpreted the relevant state law statutory term, 'general manager,' in the context of its state service of process statutes. This court is bound by that interpretation.") (citing *Cosper*, *supra*, at 83-84).)

[10] (See also *Hitt v. Nissan Motor Co.*, 399 F. Supp. 838, 842 (S.D. Fla. 1975) ("Nothing prevented Nissan-Japan from entering the American market through a selling branch or department but instead it formed Nissan-USA to serve as exclusive distributor of manufacturer Nissan-Japan's products in the continental United States. Thus, Nissan-USA is a mere conduit or vehicle for entering and exploiting the American market.").)

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1    (*Id.* at 1077 (internal citations omitted).)

2        The court thus found that NNA constituted a general manager for purposes of

3    service of process.[11] (*Id.*)

4        ### 5.   *Khachatryan v. Toyota Motor Sales, U.S.A., Inc. (C.D. Cal.).*

5        The Central District also analyzed California's general manager statute in

6    *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F.Supp.2d 1224 (C.D. Cal.

7    2008) (attached hereto as Ex. 15). There, the plaintiff served Toyota Motor

8    Corporation ("Toyota-Japan") through substitute service upon the chairman of Toyota

9    Motor Sales U.S.A., Inc. ("Toyota-America") at Toyota-America's address in

10   Torrance, California. (*Id.* at 1226.) Toyota-Japan contended that service was defective

11   because Toyota-America was not its general manager. The court rejected Toyota-

12   Japan's arguments out of hand.

13       First, as to the general manager issue, Toyota-Japan, as did NML in *Falco*,

14   asserted that service on a subsidiary does not affect service on a parent. (*Khachatryan*,

15   578 F.Supp.2d at 1227.) In dismissing the argument, the *Khachatryan* court indicated

16   that "[w]hile true, this observation is irrelevant, since Khachatryan has affected

17   service on Toyota Japan by way of Toyota America based on Toyota America's status

18   as its general manager, not as its subsidiary." (*Id.*; *see also Gray v. Mazda Motor of

19   Am., Inc.*, 560 F. Supp. 2d 928, 931 (C.D. Cal. 2008).) Toyota-Japan also suggested

20   that a general manager, in order to receive service, must be an individual. Again,

21   however, it took little effort for the court to see through Toyota-Japan's argument,

22   which was directly contradicted by several California cases explicitly permitting

23   service upon general managers, that were also corporations, to constitute service upon

24   a foreign corporation. (*Khachatryan*, 578 F.Supp.2d at 1226-27 (discussing cases).)

25       Turning to the factual record before it, the *Khachatryan* court explained that:

26

27   _____

11   The Central District also stated that "[b]ecause the requirements first described in *Cosper* are met,

28   [NML's] contentions, taken as true, that [NML] and [NNA] are independent businesses that strictly
observe corporate formalities and that [NML] does not does not exercise control over [NNA's]
activities have no effect on this conclusion." (*Falco*, 987 F. Supp. 2d at 1077.)

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

Here, it is undisputed that Toyota America is "the distributor of some Toyota vehicles, in certain geographic areas of the United States including ... California." Khachatryan notes that Toyota America "publishes and distributes marketing materials for Toyota vehicles ... which contain Toyota [Japan's] logo, trademarks, and tradename." It appears that here … Toyota Japan's relationship with Toyota America gives it "substantially the business advantages that it would have enjoyed if it conducted business" in the state itself."[12]

The court therefore found that "Toyota America is a 'general manager' for Toyota Japan within the meaning of section 416.10 of the California Code of Civil Procedure, so that Khachatryan's service on Toyota Japan by serving Toyota America was consistent with California law." (*Khachatryan*, 578 F.Supp.2d at 1227; *Gray*, 560 F. Supp. 2d at 931.)

**C.   Plaintiffs Properly Served JLRA By Delivering Process to JLRNA, Its General Manager, as Permitted By California Law.**

**1.   JLRNA Meets and Exceeds the Definition of JLRA's "General Manager" for Purposes of Service of Process Under § 416.10.**

JLRNA fits squarely within the definition of JLRA's general manager in California under all relevant precedent. JLRNA is a wholly owned subsidiary of JLRA. It is the North American face of JLRA. That is, JLRA designs, develops, and manufactures luxury vehicles. JLRNA then imports those vehicles to the United States, markets, sells, and services them by utilizing a "combined network of 331 retailers across the U.S.," including 25 Land Rover retailers and 24 Jaguar retailers in California alone. All of which is accomplished under the oversight and control of JLRA.

Just as the Court noted in Yamaha, "*Cosper* applies a fortiori to this case – that is, the relationship between the manufacturer's representative and the manufacturer in *Cosper* was far less intimate, far less connected, and far less interrelated than the relationship between [JLRNA] and [JLRA] in the case before us." (*Yamaha*, 174 Cal.App.4th at 274.) "If, in *Cosper*, a sporting-goods-oriented non-exclusive purveyor

---

[12] (*Khachatryan*, 578 F.Supp.2d at 1227 (internal citations omitted); *see also Gray*, 560 F. Supp. 2d at 931 (providing an almost identical analysis and conclusion).)

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

of Smith and Wesson guns on the West Coast was a 'general manager in this State' ...
how much more so is [JLRNA] the 'general manager in this State' ... where (unlike
*Cosper*), [JLRNA] is the American face of the Japanese company." (*Id.*) Finally, just
like *Yamaha*,

> Probable contact between the domestic representative and the
> foreign corporation leading to actual notification is far more
> present here than in *Cosper*. If it was reasonably certain that a
> relatively casual sporting goods representative would apprise the
> "foreign" manufacturer of service in *Cosper*, it is doubly
> reasonably certain [JLRNA] will apprise [JLRA] of any service in
> California. (*Id.*)

Just as JLRA's argument concerning the nonexistent requirement of serving
foreign corporation pursuant to the Hague misses the mark, so too does JLRA's
reliance on *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523 (2000), for
the proposition that its control over JLRNA must "veer into management by the
exercise of control over the internal affairs of the subsidiary and the determination of
how the company will be operated on a day-to-day basis," for service to be proper in
this case. (Defendant's Mem. of Ps & As at 8:24-11:3.) *Sonora*, and the other cases
cited by JLRA, hold no such thing. In fact, none of the cases cited by JLRA to support
its argument deal with service upon a "general manager" in this state whatsoever.
Rather, JLRA seems to conflate the test California courts employ to determine
whether a parent corporation may be *liable* for the actions of its subsidiary with the
issue before this Court – who qualifies as a "general manager" in this state under
Corporations Code § 2110 for purposes of service. The statute does not mandate – and
no California Court has held - that a foreign corporation must exercise control over the
internal affairs of its domestic subsidiary for it to be considered a "general manager"
under Corporations Code § 2110. Rather, as noted by the California Court of Appeal,
"[t]his statutory term, which has not been specifically defined by the Legislature,
includes any agent of the corporation 'of sufficient character and rank to make it
reasonably certain that the defendant will be apprised of the service made.'" (*Gibble v.
Car-Lene Research, Inc.*, 67 Cal.App.4th 295, 313 (1998).) In this regard, the question

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

is whether the relationship between the general manager and the foreign corporation provides the foreign corporation "substantially the business advantages that it would have enjoyed 'if it conducted its business through its own offices or paid agents'" in California. (*Cosper*, 53 Cal.2d at 84, quoting *Eclipse*, 148 Cal. App. 2d at 740); see also *Sims v. Nat'l Engineering Co.*, 221 Cal.App.2d 511, 513-14 (1963).) Clearly that is the case here.

Accordingly, JLRA's motion to quash for improper service is without merit and should be denied.

### 2. California Law Provides That Service Was Complete Upon Delivery of a Copy of the Summons and Complaint to JLRA's General Manager Via Its Registered Agent.

The Judicial Council Comment to California Code of Civil Procedure § 416.10 provides that "[s]ervice is effected by delivering a copy of the summons and a copy of the complaint to one of these persons by a method of service specified in Section 413.10." (Code Civ. Proc., § 416.10, Comment – Judicial Council; see also *Holiness Church of San Jose v. Metropolitan Church Ass'n*, 12 Cal.App. 445, 447-48 (1910) ("The expression 'personal service,' generally speaking, means the actual delivery of the process to the defendant in person, and such service … is made upon a corporation, domestic or foreign, by delivering a copy of the summons, together with a copy of the complaint, on certain designated officers thereof, or, if upon a foreign corporation under section 405 of the Civil Code, by delivering copies of the complaint and summons to a person resident within the state designated for that purpose by such corporation.").)

Moreover, there is no additional requirement for an entity to "accept" service of process, in order for service to be found effective.  (See, e.g., Code Civ. Proc., §§ 416.10, 416.90.) If that were the case, all service of process would fail, because defendants would always "reject" service. Because the CCP does not authorize such

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1    an option, JLRA was properly served when Plaintiffs delivered their complaint to its

2    "general manager's" agent for service of process in the state of California, CSC.

3         In this case, service on JLRA was effected upon delivery of the summons and

4    complaint to its general manager, JLRNA, via its registered agent.

5         **D.    Plaintiffs Request Leave to Seek Jurisdictional Discovery**.

6         In the unlikely event that this Court deems Plaintiffs' showing inadequate,

7    Plaintiffs respectfully requests leave to seek jurisdictional discovery.

8         Because plaintiffs bear the burden of proving jurisdictional facts in response to

9    a motion to quash, California courts – and Federal Courts - have repeatedly held that a

10   "plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to

11   an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its

12   burden of proof." (*In re Automobile Antitrust Cases I & II*, 135 Cal.App.4th 100, 127

13   (2005); *Thomson v. Anderson*, 113 Cal.App.4th 258, 271 (2003) ["A plaintiff is

14   generally entitled to conduct discovery on a jurisdictional issue before the trial court

15   grants a motion to quash."], citing *Goehring v. Superior Court*, 62 Cal.App.4th 894,

16   911 (1998); *U.S. ex rel. Miller v. Public Warehousing Co. KSC*, 636 Fed.Appx. 947,

17   949 (9th Cir. 2016) [Permitting discovery in analogous case to obtain evidence re:

18   relationship between foreign corporation and domestic subsidiary/general manager in

19   this state].) The Courts' liberal rules for jurisdictional discovery make particular sense

20   in the context of this case, where Plaintiffs have never had a prior opportunity to seek

21   jurisdictional discovery from the defendant challenging jurisdiction and where, based

22   on the limited evidence available to them, Plaintiffs have already made a strong

23   showing. Plaintiffs resolutely contend that the evidence identified in this motion is

24   sufficient to meet their burden, nevertheless, based on the evidence uncovered thus

25   far, Plaintiffs have no doubt that jurisdictional discovery will lead to additional

26   evidence demonstrating that JLRNA is, in fact, JLRA's "general manager in this

27   state" under all relevant case law. (Stock Decl. ¶ 14.)

28

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

## IV.   CONCLUSION

The California Supreme Court has held that service on a corporation by means of a general manager under California Corporations Code section 2110 is proper when "the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." (*Cosper v. Smith & Wesson Arms Co.*, 53 Cal.2d 77, 83-84 (1959).) According to the United States Supreme Court case, *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988), a party may serve a foreign entity through its domestic subsidiary as an agent of service without implicating the Hague Service Convention, if permitted by state law. Thus, JLRA has been properly served in this case. This Court should deny its motion to quash.

Dated: February 10, 2020

Respectfully submitted,
WEITZ & LUXENBERG, P.C.


By:   */s/ Tyler Stock*
TYLER STOCK
Attorneys for Plaintiff

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS

**CERTIFICATE OF SERVICE**

Laukat, et al. v. ABB, Inc., et al.
United States District Court, Central District of California
Case No. 2:19-cv-09436-CJC-Ex

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 1880 Century Park East, Suite 700, Los Angeles, California 90067.

On February 10, 2020, I served the document(s) entitled:

**PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS**

on all interested parties in this action by:

☒ **ELECTRONIC COURT FILING (ECF):** the above-entitled document to be served electronically through the United States District Court, Northern District ECF website, addressed to all parties appearing in the Court's ECF service list. A copy of the "Filing Receipt" PAGE will be maintained with the original document in our office.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on February 10, 2020, at Los Angeles, California**.**

_____
Robyn Ikehara

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT JAGUAR LAND ROVER AUTOMOTIVE'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO QUASH SERVICE OF SUMMONS